UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:

TIME OUT PROPERTIES, LLC, et al.                    CASE NO. 24-3435-5-PWM

    DEBTOR                                               CHAPTER 11

### APPLICATION TO EMPLOY MARKETING BROKER

NOW COMES John C. Bircher III, Trustee of Time Out Properties, LLC, et al. (the "Trustee") and submits the following application (the "Application") pursuant to §§ 327 and 328 of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure and requests an Order authorizing Debtor to employ Robert J. Tramantano and the firm Great Neck Realty Company of North Carolina, LLC (the "Broker"), effective as of the filing date of this Application. In support of this Application, Debtor refers to and relies upon the attached affidavit (the "Affidavit"), and respectfully represents as follows:

    1.    On September 20, 2024, five of the six Jointly Administered Debtors filed a voluntary bankruptcy Petition under Chapter 11 of the Bankruptcy Code, and on October 25, 2024, John C. Bircher III was appointed as Interim Chapter 11 Trustee.

    2.    On October 5, 2023, TOPPOS, LLC, the Manufactured Home holding company, filed Chapter 11, and John C. Bircher III was appointed Chapter 11 Trustee, and was subsequently appointed as Chapter 7 Trustee.

    3.    On January 9, 2025, the Court entered an Order allowing Joint Administration of Grand Valley MHP, LLC, Rolling Acres MHC, LLC, Prairie Knolls MHP, LLC, Time Out Properties, LLC[1], Top Park Services, LLC, and the TOPPOS, LLC case.

    4.    This Court has jurisdiction over all matters set forth herein pursuant to 28

---

[1] Time Out Properties, LLC is the Parent Company Member of the eight Mobile Home Parks to be sold and will be the recipient of the expected transfer of assets and liabilities of the 5 non-debtor parks identified as Brittany Court, Scottsdale, Patch Place, Cedarbrook and Maple Creek. Trustee will, under separate Motion, seek authority to transfer all assets and liabilities to effectuate the sale of the assets included free and clear under section 363.

U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

5. The Trustee is seeking proposals for the purchase of all or substantially all the real and personal property assets (the "Sale Assets") pursuant to proposed bidding procedures, auction and hearing (the "Sale"). In conjunction with the proposed Sale, the Trustee will request the Court to enter an Order approving certain bidding procedures (the "Bidding Procedures Order") which provides an opportunity for the Trustee to expose the Sale Assets to the marketplace, solicit bids, conduct an auction if qualified bids are timely submitted, and a hearing to consider confirmation of the prevailing and back-up bids.[2]

6. The Debtor seeks approval by this Court of the employment of the Broker in accordance with the terms of the attached Exclusive Right to Sell Listing Agreement (the "Agreement") to assist the Trustee in connection with a potential transaction (a "Transaction") to effect, or that may involve, a sale or transfer of the Sale Assets to a Buyer. The professional services would include the following:

   a. Identify potential Buyers based on information to be provided by the Trustee and make recommendations to prepare the Sale Assets for proper investigation by potential Buyers.

   b. Prepare or assemble materials about the Sale Assets for consideration by prospective Buyers and prepare sales materials, which would include information regarding the Sale Assets, in each case, based on information provided by the Trustee.

   c. Prepare a program which may include marketing a potential Transaction through such methods as the Broker may deem appropriate.

   d. Contact potential Buyers for consideration and evaluation and require potential Buyers to execute Confidentiality Agreements in favor of the Debtor.

   e. Facilitate the development of a Virtual Data Room (VDR) with information provided by the Debtor.

---

[2] For purposes of this Application, capitalized terms have the meanings set forth in the Bidding Procedures Order.

  f. Provide access to the VDR or send materials to interested parties regarding the Sale Assets, after completing confidentiality documents.

  g. Respond, provide information, communicate and obtain offers from interested parties.

  h. Advise the Trustee and make recommendations as to whether a particular bid should be accepted.

  7. The Broker represents no other entity in connection with this case, represents or holds no interest adverse to the interest of the estate with respect to the matters on which it is to be employed, and is disinterested as that term is defined in 11 U.S.C. § 101. The Broker has filed an affidavit pursuant to Bankruptcy Rules 2014 and 2016, disclosing the information relevant to this Application.

  8. The Broker has agreed to represent the Trustee for compensation and reimbursement of expenses, as follows:

  a. <u>Transaction Fee</u>.  Any Expense Advances and other costs are borne by the Broker and not reimbursed by the estate, and his compensation is limited to a "<u>Transaction Fee</u>" upon approval and closing of any Transaction, as defined in Section I.J of the attached Agreement.

  9. The Trustee believes that the services to be provided by the Broker can and will provide specific benefits to the Estate and its services will enhance the administration of this case.  The Trustee believes that such services will be in the best interest of all parties involved in this proceeding.

  WHEREFORE, Trustee respectfully requests that the Court enter an order authorizing Trustee to employ and retain the Broker to provide services to the Trustee as set forth above, effective as of the filing date of this Application.

  Dated: 02/05/2025

        <u>s/John C. Bircher III</u>
        John C. Bircher III
        N.C. State Bar No. 24119
        DAVIS HARTMAN WRIGHT LLP
        209 Pollock Street
        New Bern, NC 28560
        Telephone/Fascimile 252-262-7055
        Email: jcb@dhwlegal.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:

TIME OUT PROPERTIES, LLC, et al.        CASE NO. 24-3435-5-PWM

DEBTOR                                   CHAPTER 11

**AFFIDAVIT**

I, Robert J. Tramantano, principal broker of Great Neck Realty Company of North Carolina, LLC ("Great Neck Realty Company"), duly sworn, and in view of the Application to Employ Marketing Broker, do make this oath:

1. I am the principal broker of Great Neck Realty Company.

2. This Affidavit is being given pursuant to Rule 2014 of the Bankruptcy Rules and Section 327 of the Bankruptcy Code.

3. As of the date of the filing of the Debtors' Chapter 11 Petitions, the Debtors did not owe me or Great Neck Realty Company any funds from any pre-petition or post-petition agreement or obligation.

4. I hold no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

This the 5th day of February, 2025.

Great Neck Realty Company

By: _____
Robert J. Tramantano
P.O. Box 609
Carrboro, NC 27510
Phone: 516-902-9568
Email: rtramantano@greatneckrealtyco.com

Sworn to and subscribed
before me this the 5th day of February, 2025.

Srinivasa R Gangaraju
SRINIVASA R GANGARAJU, Notary Public
My Commission Expires: 16th FEB 2028.



# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This **Exclusive Right to Sell Listing Agreement** (the "Agreement") is made on 5th day of February, 2025 by and between Time Out Properties, LLC; Brittany Court MHP, LLC; Grand Valley, MHP LLC; Patch Place MHC, LLC; Scottsdale MHP, LLC; Maple Creek MHP, LLC; Cedarbrook Estates MHP, LLC; Prairie Knolls MHP, LLC; Rolling Acres MHC, LLC; and TOPPOS, LLC (collectively, the "Seller"), and Great Neck Realty Company of North Carolina, LLC ("Broker").

Subject to entry of a Bankruptcy Court Order approving this Agreement, Seller hereby retains Broker to act as Seller's real estate broker upon the terms and conditions set forth in this Agreement which constitutes the entire understanding between the parties and may not be modified in any manner, except by an instrument in writing executed by the parties hereto.

I. **Definitions**: the following terms as used herein have the following meanings:

   A. "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of North Carolina.

   B. "Broker" means Great Neck Realty Company of North Carolina, LLC.

   C. "Effective Date" means the date on which this Agreement is approved by Order of the Bankruptcy Court.

   D. "Gross Proceeds" means the sum of the total consideration transferred to, or for the benefit of, Seller and inclusive of, but not limited to, cash paid or payable, directly or indirectly, in connection with a Transaction. The computation of Gross Proceeds as well as the computation of the Transaction Fee as defined herein shall not be affected by the costs of advertising, Seller's legal fees, break-up fees, nor any closing costs and/or adjustments, including but not limited to adjustments and/or payments of whatever kind to lienholders, secured parties or offerors.

   E. "Marketing Expenses" means all costs associated with marketing of the Properties as defined herein.

   F. "Properties" shall mean the fee-simple interest in real property identified on Exhibit A hereto, as well as the mobile homes owned by TOPPOS, LLC located at or on the Properties.

   G. "Seller" means, collectively, Time Out Properties LLC, Brittany Court MHP LLC, Grand Valley MHP LLC, Grand Valley MHP LLC, Patch Place MHC LLC, Scottsdale MHP LLC, Maple Creek MHP LLC, Cedarbrook Estates MHP LLC, Prairie Knolls MHP LLC, Rolling Acres MHC LLC, and TOPPOS, LLC (or the predecessors of interest to these entities, if applicable).

   H. "Term of the Agreement" shall expire on the closing of a Transaction, or twelve (12) months from and after the Effective Date, whichever comes earlier, and which term can be extended pursuant to the same terms and conditions and by the mutual consent of the parties and approval of the Bankruptcy Court.

Docusign Envelope ID: A41F21A2-0940-4044-A5D6-40A3AA634507
Case 24-03435-5-PWM    Doc 126    Filed 02/05/25    Entered 02/05/25 13:11:52    Page 6 of 20

Time Out Properties, LLC et. al.
Great Neck Realty Co.
Page 2 of 8

  I. "Transaction" means the sale or transfer of title to any and/or all of the Properties. Seller and Broker acknowledge that there may be more than one Transaction.

  J. "Transaction Fee" means two and one-half percent (2.5%) of Gross Proceeds less than or equal to $10,000,000.00; plus one and three-quarters percent (1.75%) of the incremental Gross Proceeds between $10,000,001.00 and $20,000,000.00; plus three-quarters percent (0.75%) of the incremental Gross Proceeds between $20,000,001.00 and $30,000,000.00; plus one-half percent (0.50%) of the incremental Gross Proceeds in excess of $30,000,000.00. In the event that there is more than one Transaction, the Transaction Fee shall apply to *cumulative* Gross Proceeds realized from all Transactions. A Transaction Fee shall be payable at closing of a Transaction. Any third-party broker representing a prospective buyer shall be paid by its buyer.

**II. Authority & Services**

  A. <u>Authority</u>: Broker shall have the sole and exclusive authority to represent Seller, on an exclusive right to sell basis, in the negotiation of a Transaction. Neither the Seller nor any of its agents, except Broker, may initiate discussions with any third-party regarding this Transaction, except through Broker. If Seller or any of its agents receive any inquiry regarding a Transaction, such inquiry must be reported to Broker immediately. Seller retains complete discretion to accept or reject a Transaction, subject to approval of the Bankruptcy Court. Notwithstanding anything contained herein, Broker understands that Seller has received a proposal to purchase the Properties from a prospective buyer, and Broker shall work with and on behalf of Seller in securing that prospective buyer as a stalking horse purchaser.

  B. <u>Marketing Services</u>: Broker's services may include, but are not limited to, the review of pertinent documents, coordination with Seller for development of due diligence materials (at Seller's sole cost), development and implementation of a marketing plan, communications with any prospective buyers, solicitation of offers, assistance to Seller in evaluation, structuring, negotiation and implementation of any proposed Transaction, and regular communication and cooperation as needed with Seller and its agents and attorneys regarding status and execution of Transaction. As it relates to the development of a marketing plan, Broker will prepare a budget, to be approved by Seller prior to commencement of marketing and not to exceed fifteen thousand dollars ($15,000.00), which shall comprise the Marketing Expenses.

  C. <u>Relationship</u>: Broker's role shall be as the Seller's agent and Broker hereby acknowledges its fiduciary responsibilities to Seller. Broker is assuming no management responsibilities and Broker's duties hereunder run solely to the Seller. Seller shall remain fully responsible for all decisions and matters as to which Broker's advice is sought. All advice, written or oral, provided by Broker to the Seller pursuant to this Agreement is intended solely for the use and benefit of the Seller.

Docusign Envelope ID: A41F21A2-0940-4044-A5D6-40A3AA634507
Case 24-03435-5-PWM   Doc 126   Filed 02/05/25   Entered 02/05/25 13:11:52   Page 7 of 20

Time Out Properties, LLC et. al.
Great Neck Realty Co.
Page 3 of 8

**III.** **Timing of Payment of Transaction & Reimbursement of Marketing Expenses:** Simultaneous with seeking approval of a Transaction, the Seller will seek approval of the Bankruptcy Court to pay the Transaction Fee and reimburse Broker of actual Marketing Expenses incurred so that Broker may be paid from Gross Proceeds at the time of the Transaction.

**IV.** **Seller Responsibilities**

  A. Seller represents that Seller shall have the right to convey Seller's interest in the Property, upon approval of the Bankruptcy Court, and that it executes this agreement with full power and authority to do so and after having consulted with legal counsel with respect to the terms and conditions herein.

  B. Upon the Effective Date, Seller will deliver to Broker a list of all brokers, principals, tenants, or other prospects, including all related correspondence and records, who have expressed an interest in using or acquiring the Property.

  C. Seller shall make available to Broker all information reasonably requested by Broker for the purpose of enabling Broker to perform its obligations pursuant to this Agreement. Seller hereby warrants that the information it provides to Broker shall be accurate and complete, to the best of Seller's actual knowledge. Seller shall have the continuing obligation to assess the accuracy of the representations as to the Property and advise Broker in writing as soon as it becomes aware of any inaccuracy, inconsistency, incompleteness or change of circumstances and to correct same. Broker shall under all circumstances be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all information that has been furnished to it by, or on behalf of, the Seller and shall not be responsible for any inaccuracy or incompleteness of any information provided to Broker.

  D. Seller warrants and represents that it will immediately inform Broker as to any known or suspected risk of environmental hazard or contamination and any known, existing, or pending violation(s) of federal, state or local environmental laws or regulations related to the Property. If Seller has ordered environmental reports or other studies related to the Property, as soon as such become available, Seller will immediately provide a true and complete copy of such reports to Broker and Broker is hereby authorized to disseminate such reports to prospects.

  E. Seller shall maintain the Property and shall furnish utilities and public liability insurance.

  F. Seller shall promptly and diligently review offering or marketing materials prepared by Broker for accuracy and completeness and will advise Broker, in writing, of any corrections or modifications. Seller shall then promptly review and approve any modifications, in writing, before Broker disseminates same. Broker shall be under no obligation: (A) to disseminate offering materials that it has reason to believe are inaccurate or are materially misleading, and (B) to disseminate such

Docusign Envelope ID: A41F21A2-0940-4044-A5D6-40A3AA634507

Case 24-03435-5-PWM    Doc 126    Filed 02/05/25    Entered 02/05/25 13:11:52    Page 8 of 20

Time Out Properties, LLC et. al.
Great Neck Realty Co.
Page 4 of 8

    offering materials until such time as Broker receives Seller's written approval of same.

  G. With respect to application to the Bankruptcy Court for an order approving this Agreement, the following shall be included:

    i. A copy of this Agreement in its entirety.

    ii. A request for authorization of the employment of Broker pursuant to Section 327 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*.; and

    A request that the Bankruptcy Court incorporate by reference the terms of this Agreement in its entirety in its order approving employment of Broker.

## VI. Indemnification

  A. The Seller shall defend, indemnify and hold harmless Broker and its affiliates, directors, officers, employees, agents, representatives and controlling persons ("Indemnified Parties") from and against any and all losses, claims, damages, expenses and liabilities (including but not limited to counsel fees and disbursements in connection with the investigation of, preparation for, or defense of any pending or threatened claim) (collectively, "Losses"), as incurred, to which such Indemnified Party may become subject, related to or arising out of activities performed by or on behalf of an Indemnified Party pursuant to this Agreement, any transactions contemplated hereby, or the Indemnified Party's role in connection therewith; provided, however, that any claim for indemnification shall be determined by the Bankruptcy Court and the Seller shall have no obligation to pay any Losses unless ordered by the Bankruptcy Court.

  B. Bankruptcy Protocol; Notwithstanding anything to the contrary:

    i. All requests of Broker for payment of indemnity pursuant to any Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of the Agreement and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought.

    ii. In no event shall Broker be indemnified if the Seller or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, Broker's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

    iii. In the event that Broker seeks reimbursement for attorneys' fees from the Seller pursuant to the indemnity provisions in the Agreement, the invoices and supporting time records from such attorneys shall be included in Broker's applications for approval of indemnity payments (both interim and final) and such invoices and time records shall be subject to the United

Docusign Envelope ID: A41F21A2-0940-4044-A5D6-40A3AA634507
Case 24-03435-5-PWM    Doc 126    Filed 02/05/25    Entered 02/05/25 13:11:52    Page 9 of 20

Time Out Properties, LLC et. al.
Great Neck Realty Co.
Page 5 of 8

       States Seller's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy Section 330(a)(3)(C) of the Bankruptcy Code.

  C. The provisions of this section of the Agreement shall survive the termination of the Agreement.

**VII.** <u>**Miscellaneous**</u>

  A. <u>Dispute Resolution; Choice of Law, Jury Wavier, Attorneys' Fees</u>: This Agreement is subject to and construed in accordance with the laws of North Carolina without regard to any principles of conflict law. The parties to this Agreement waive any rights they may otherwise have to a trial by jury arising out of or related to this Agreement or Broker's services thereunder. If any party to this Agreement brings an action in any way related to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs and expenses in connection with such proceeding.

  B. <u>Bankruptcy Court Jurisdiction</u>: The Bankruptcy Court has and shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation of execution of this Agreement and any disputes, claims or causes of action arising therefrom. Any damages arising out of a breach of this Agreement shall be limited to compensatory damages, if any, and the parties hereto hereby waive their right to seek punitive, consequential, exemplary, or other similar types of special damages.

  C. <u>Force Majeure</u>: Broker shall have no liability for delays, failure in performance, or damages due to fire, explosion, lighting, power surges or failures, strikes or labor disputes, water, acts of God, the elements, war, civil disturbances, acts of civil or military authorities, telecommunications failure, fuel or energy shortages, acts or omissions of communications carriers, or other causes beyond Broker's control whether or not similar to the foregoing.

  D. <u>Good Faith</u>: The parties hereto shall deal with each other fairly and in good faith so as to allow each party to perform its duties and earn the benefits of this Agreement and shall not interfere, prevent or prohibit the other, in any manner, prior to or during the term of this Agreement from carrying out its duties and obligations under the Agreement.

  E. <u>Listing Price</u>: A List Price may or may not be publicized in connection with marketing of the Properties. To the extent that Broker recommends that a Listing Price be utilized, then the Listing Price shall be agreed upon in writing between Seller and Broker.

  F. <u>Announcement</u>: Following the closing of a Transaction, Broker may announce and publicize its role pursuant to this Agreement on its website and in other marketing materials.

Time Out Properties, LLC et. al.
Great Neck Realty Co.
Page 6 of 8

    G.    <u>Nondiscrimination</u>:  Seller and Broker acknowledge that it is illegal for either party to refuse to display or sell the Property to any person because of race, color, religion, national origin, sex, marital status, or physical disability.

    H.    <u>Counterparts</u>:  This agreement may be executed in two or more counterparts, each of which, when executed, whether by email, fax, or other electronic communication, shall be deemed an original and all of which taken together shall constitute one and the same complete Agreement.

    I.    <u>Notice</u>:  Any correspondence or required notice shall be addressed as follows and shall be sent by Certified Mail, Return Receipt Requested, or by FedEx, either of which notices shall be supplemented by facsimile and/or email transmission, and shall be effective as of the date of actual receipt of the Certified Mail or FedEx. Such notice shall be addressed as follows:

| | |
|---|---|
| If to Broker: | Great Neck Realty Company of North Carolina, LLC<br>1500 W. Main Street<br>P.O. Box 609<br>Carrboro, NC 27510<br>ATTN: Robert Tramantano<br>Telephone: (516) 902-9568<br>Email: rtramantano@greatneckrealtyco.com |
| If to Seller: | John C. Bircher III<br>Davis Hartman Wright LLP<br>209 Pollock Street<br>New Bern, NC 28560<br>Telephone: (252) 262-7055<br>Email: jcb@dhwlegal.com |

If the foregoing correctly sets forth the agreement between the Seller and Broker, please sign and return the enclosed copy of this Agreement, whereupon it shall become our binding agreement.

**SIGNATURE PAGES TO FOLLOW**

Time Out Properties, LLC et. al.
Great Neck Realty Co.
Page 7 of 8

**SELLER:**                  **BROKER:**

Time Out Properties, LLC
a Delaware limited liability company

By: ___[signature]___
Its: Trustee

Great Neck Realty Company of North Carolina, LLC,
a North Carolina limited liability company

By: ___Robert J. Tramantano___
Robert J. Tramantano
Principal

Brittany Court MHP, LLC,
an Illinois limited liability company

By: ___[signature]___
Its: Time Out Properties, LLC, manager, by John C. Bircher, III, Trustee

Grand Valley MHP, LLC,
an Illinois limited liability company

By: ___[signature]___
Its: Trustee

Patch Place MHC, LLC,
an Ohio limited liability company

By: ___[signature]___
Its: Time Out Properties, LLC, manager, by John C. Bircher, III, Trustee

Scottsdale MHP, LLC,
an Illinois limited liability company

By: ___[signature]___
Its: Time Out Properties, LLC, manager, by John C. Bircher, III, Trustee

Maple Creek MHP, LLC,
an Illinois limited liability company

By: ___[signature]___
Its: Time Out Properties, LLC, manager, by John C. Bircher, III, Trustee

Cedarbrook Estates, MHP LLC,
an Illinois limited liability company

By: ___[signature]___
Its: Time Out Properties, LLC, manager, by John C. Bircher, III, Trustee

Time Out Properties, LLC et. al.
Great Neck Realty Co.
Page 8 of 8

Prairie Knolls MHP, LLC,
an Illinois limited liability company

By: _____
Its: Trustee

Rolling Acres MHC, LLC,
an Illinois limited liability company

By: _____
Its: Trustee

TOPPOS, LLC,
a Delaware limited liability company

By: _____
Its: Trustee

8

# EXHIBIT A

## PROPERTIES

| Community Name | Legal Name | Address | City | State | Zip | County |
|---|---|---|---|---|---|---|
| Brittany Court | Brittany Court MHP LLC | 3206 E Elm Street | Springfield | IL | 62702 | Sangamon |
| Grand Valley | Grand Valley MHP LLC | 1401 W N Grand Ave | Springfield | IL | 62702 | Sangamon |
| Patch Place | Patch Place MHC LLC | 2735 S 14th Street | Springfield | IL | 62703 | Sangamon |
| Scottsdale | Scottsdale MHP LLC | 720 Forrest Avenue | Springfield | IL | 62702 | Sangamon |
| Maple Creek | Maple Creek MHP LLC | 200 West Street | Woodson | IL | 62695 | Morgan |
| Cedarbrook Est. | Cedarbrook Estates MHP LLC | 544 Brooklyn Ave | Jacksonville | IL | 62650 | Morgan |
| Prairie Knolls | Prairie Knolls MHP LLC | 1034 E Morton Road | Jacksonville | IL | 62650 | Morgan |
| Rolling Acres | Rolling Acres MHC LLC | 1042 E Morton Road | Jacksonville | IL | 62650 | Morgan |

1. Brittany Court

Parcel 1
The West 200 feet of the South 100 feet of Lot 83 in Wanless' Capital Heights Addition to the City of Springfield, Illinois.

Parcel 2
The East 100 feet of the North 150 feet of Lot 84 in Wanless' Capital Heights Addition to the City of Springfield, Illinois, except the West 50 feet of the North 120.50 feet of the East 100 feet thereof.

Parcel 3
The East 100 feet of the South 420 feet of Lot 84 in Wanless' Capital Heights Addition to the City of Springfield, Illinois.

Parcel 4
The North 38 feet of the East 88 feet of the South 150 feet of Lot 14 in Wanless' Bergen Park Addition to the City of Springfield, Illinois.

Parcel 5
Lot 13 of Wanless' Bergen Park Addition, except the South approximately 200 feet thereof; and Lot 14 of Wanless' Bergen Park Addition, except the South 150 feet thereof. All in the City of Springfield, Illinois.

Parcel 6
The South 150 feet of Lot 14, except the East 88 feet thereof, in the City of Springfield, Illinois. of WANless Bergen PARK ADDITION
All except any interest in the coal, oil, gas and other minerals underlying the land which have been heretofore conveyed or reserved in prior conveyances, and all rights and easements in favor of the estate of said coal, oil, gas and other minerals, if any.

All situated in Sangamon County, Illinois.

2. Grand Valley

Parcel A:
Lots 47 and 102 Clover Acres, a subdivision of part of the South half of the Southwest Quarter of the Southeast Quarter of Section 20, Township 16 North, Range 5 West of the Third Principal Meridian, Sangamon County, Illinois, except such portion thereof taken or dedicated for North Grand Avenue.

Parcel B:
Part of the Southeast Quarter of Section 20, Township 16 North, Range 5 West of the Third Principal Meridian, Sangamon County, Illinois, described as follows:

Beginning at the Southwest corner of the North half of the Southwest Quarter of the Southeast Quarter of said Section; thence North on the Quarter Section line, 1654.80 feet to the Northwest corner of the South half of the North half of the Northwest Quarter of the Southeast Quarter of said Section; thence deflecting to the right 90 degrees 16 minutes 00 seconds, 1324.75 feet to the Northeast corner of the South half of the North half of the Northwest Quarter of the Southeast Quarter of said Section; thence deflecting to the left 90 degrees 16 minutes 00 seconds, 331.08 feet to the Northeast corner of the Northwest Quarter of the Southeast Quarter of said Section; thence deflecting to the right 90 degrees 16 minutes 00 seconds, on the Quarter section line, 659.73 feet; thence deflecting to the right 96 degrees 44 minutes 10 seconds, Southwesterly on the West line of Lots 4 and 5 as recorded in Sangamon County Circuit Court Records, Book "L", Page 563,

2081.22 feet; thence deflecting to the left 96 degrees 07 minutes 00 seconds, 461.01 feet; thence deflecting to the right 92 degrees 50 minutes 10 seconds, 550.62 feet to the North right of way line of North Grand Avenue; thence deflecting to the right 86 degrees 57 minutes 50 seconds, West on said right of way line, 285.40 feet; thence deflecting to the right 96 degrees 19 minutes 00 seconds, 177.00 feet; thence deflecting to the left 96 degrees 19 minutes 00 seconds, 210.00 feet; thence deflecting to the left 83 degrees 41 minutes 00 seconds, 27.00 feet; thence deflecting to the right 83 degrees 41 minutes 00 seconds, 329.41 feet to the East right of way line of Amos Avenue; thence deflecting to the right 89 degrees 29 minutes 00 seconds, North on said right of way line, 477.90 feet to the South line of the North half of the Southwest Quarter of the Southeast Quarter of said Section; thence deflecting to the left 89 degrees 43 minutes 10 seconds, 1350.18 feet to the point of beginning.

Excepting part of the Southeast Quarter of Section 20, Township 16 North, Range 5 West of the Third Principal Meridian, in Sangamon County, Illinois, commencing at an iron pipe at the Southwest corner of the North half of the Southwest Quarter of the Southeast Quarter of said Section 20; thence North 90 degrees 00 minutes East, along the South line of the North half of the South half of the Southeast Quarter of said section, 1350.18 feet; thence South 00 degrees 16 minutes 50 seconds East, along the East right of way line of Amos Avenue, 477.90 feet; thence South 89 degrees 45 minutes 50 seconds East, 329.41 feet; thence North 6 degrees 33 minutes 10 seconds East, 27.00 feet; thence South 89 degrees 45 minutes 50 seconds East, 210.00 feet; thence South 6 degrees 33 minutes 10 seconds West, 177.00 feet to a point on the North line of North Grand Avenue; thence South 89 degrees 45 minutes 50 seconds East, along said North line, 50.30 feet to the point of beginning; thence North 6 degrees 33 minutes 10 seconds East, 199.79 feet to a point being the beginning of a curve having a radius of 230 feet and its center located North 83 degrees 26 minutes 50 seconds West, from said point; thence Northwesterly along said curve, 226.74 feet; thence North 46 degrees 14 minutes 28 seconds West, 198.51 feet; thence North 43 degrees 45 minutes 32 seconds East, 4.44 feet; thence South 89 degrees 33 minutes 50 seconds East, 461.01 feet; thence South, 3 degrees 16 minutes 20 seconds West, 550.62 feet to the North line of North Grand Avenue; thence North 89 degrees 45 minutes 50 seconds West, 235.10 feet along said North line to the point of beginning.

Further excepting: Part of the East half of the Southeast Quarter of Section 20; Township 16 North, Range 5 West of the Third Principal Meridian, Sangamon County, Illinois, more particularly described as follows:

Beginning at the Northeast corner of the Southeast Quarter of said Section 20; thence South 0 degrees 01 minutes 38 seconds West, along the East line of said Section 20, 958.98 feet; thence North 82 degrees 22 minutes 00

seconds West, 777.53 feet; thence North 7 degrees 10 minutes 00 seconds East, 457.00 feet to the true point of beginning; thence North 82 degrees 50 minutes 00 seconds West, 40.00 feet; thence North 7 degrees 10 minutes 00 seconds East, 185.00 feet; thence South 82 degrees 50 minutes 00 seconds East, 40.00 feet; thence South 7 degrees 10 minutes 00 seconds West, 185.00 feet to the true point of beginning.

Parcel C:
Part of the Southeast Quarter of Section 20, Township 16 North, Range 5 West of the Third Principal Meridian, in Sangamon County, Illinois, commencing at an iron pipe at the Southwest corner of the North half of the Southwest Quarter of the Southeast Quarter of said Section 20; thence North 90 degrees 00 minutes East, along the South line of the North half of the South half of the Southeast Quarter of said Section, 1350.18 feet; thence South 0 degrees 16 minutes 50 seconds East, along the East right of way line of Amos Avenue, 477.90 feet; thence South 89 degrees 45 minutes 50 seconds East 329.41 feet; thence North 6 degrees 33 minutes 10 seconds East 27.00 feet; thence South 89 degrees 45 minutes 50 seconds East, 210.00 feet; thence South 6 degrees 33 minutes 10 seconds West, 177.00 feet to a point on the North line of North Grand Avenue; thence South 89 degrees 45 minutes 50 seconds East along said North line, 50.30 feet to the point of beginning; thence North 6 degrees 33 minutes 10 seconds East, 199.79 feet to a point being the beginning of a curve having a radius of 230 feet and its center located North 83 degrees 26 minutes 50 seconds West from said point; thence Northwesterly along said curve 226.74 feet; thence North 46 degrees 14 minutes 28 seconds West 198.51 feet; thence North 43 degrees 45 minutes 32 seconds East, 4.44 feet; thence South 89 degrees 33 minutes 50 seconds East 461.01 feet; thence South 3 degrees 16 minutes 20 seconds West, 550.62 feet to the North line of North Grand Avenue; thence North 89 degrees 45 minutes 50 seconds West, 235.10 feet along said North line to the point of beginning.

Except all coal, minerals and mining rights heretofore conveyed or reserved of record.

Situated in Sangamon County, Illinois.

3. Patch Place

PARCEL 1:

LOT 8 OF HARVARD PARK, THIRD PLAT, EXCEPT THE SOUTH 380 FEET AND THE NORTH 10 FEET THEREOF; PART OF LOTS 9 AND 10 IN HARVARD PARK, THIRD PLAT, DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 9; RUNNING THENCE SOUTH 203.63 FEET TO AN IRON STAKE; RUNNING THENCE EAST PARALLEL WITH THE SOUTH LINE OF SAID LOTS 9 AND 10 TO A POINT WHICH IS 30 FEET EAST OF THE DIVIDING LINE BETWEEN SAID LOTS 9 AND 10; RUNNING THENCE NORTH PARALLEL WITH THE SAID DIVIDING LINE TO THE SOUTH LINE OF THE ILLINOIS TRACTION RAILROAD; AND RUNNING THENCE NORTHWESTERLY ALONG SAID RIGHT-OF-WAY LINE TO THE PLACE OF BEGINNING, EXCEPTING THE NORTH 10 FEET THEREOF; THE SOUTH 40 FEET OF THAT PART OF LOTS 9 AND 10 IN HARVARD PARK, THIRD PLAT, DESCRIBED AS FOLLOWS: BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 9; RUNNING THENCE SOUTH 243.63 FEET TO AN IRON STAKE; RUNNING THENCE EAST PARALLEL WITH THE SOUTH LINE OF SAID LOTS 9 AND 10 TO A POINT WHICH IS 30 FEET EAST OF THE DIVIDING LINE BETWEEN SAID LOTS 9 AND 10; RUNNING THENCE NORTH PARALLEL WITH THE SAID DIVIDING LINE TO THE SOUTH LINE OF THE ILLINOIS TRACTION RAILROAD; AND RUNNING THENCE NORTHWESTERLY ALONG SAID RIGHT-OF-WAY LINE TO THE PLACE OF BEGINNING, EXCEPTING AND RESERVING THE NORTH 10 FEET THEREOF; PART OF LOTS 9 AND 10 IN HARVARD PARK, THIRD PLAT, BOUNDED AS FOLLOWS, TO-WIT: BEGINNING AT A POINT IN THE WEST LINE OF SAID LOT 9, 303.63 FEET SOUTH OF THE NORTHWEST CORNER THEREOF; THENCE SOUTH 149.53 FEET; MORE OR LESS, TO THE SOUTHWEST CORNER OF SAID LOT 9; THENCE EAST 380 FEET ALONG THE SOUTH LINE OF SAID LOTS 9 AND 10 TO A POINT 20 FEET WEST OF THE SOUTHEAST CORNER OF SAID LOT 10; THENCE NORTH PARALLEL WITH THE EAST LINE OF SAID LOT 10, 149.53 FEET; THENCE WEST 380 FEET TO THE PLACE OF BEGINNING; AND PART OF LOTS 9 AND 10 IN HARVARD PARK, THIRD PLAT, BOUNDED AS FOLLOWS, TO-WIT: BEGINNING AT A POINT 243.63 FEET SOUTH OF THE NORTHWEST CORNER OF LOT 9, RUNNING THENCE SOUTH 60 FEET; THENCE EAST 380 FEET; THENCE NORTH 60 FEET; THENCE WEST 380 FEET TO THE PLACE OF BEGINNING.

EXCEPT ANY INTEREST IN THE COAL, OIL, GAS AND OTHER MINERALS UNDERLYING THE LAND WHICH HAVE BEEN HERETOFORE CONVEYED OR RESERVED IN PRIOR CONVEYANCES, AND ALL RIGHTS AND EASEMENTS IN FAVOR OF THE ESTATE OF SAID COAL, OIL, GAS AND OTHER MINERALS, IF ANY.

SITUATED IN SANGAMON COUNTY, ILLINOIS.

PARCEL 2:

A PART OF LOT 19 OF HARVARD PARK THIRD PLAT TO THE CITY OF SPRINGFIELD, ILLINOIS DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN AT THE SOUTHWEST CORNER OF LOT 9 OF HARVARD PARK THIRD PLAT; THENCE NORTH 89 DEGREES 49 MINUTES 15 SECONDS EAST ALONG THE SOUTH LINE OF LOT 9 AND LOT 10 OF HARVARD PARK THIRD PLAT, A DISTANCE OF 380.05 FEET TO AN IRON PIN ON THE EXISTING WEST RIGHT OF WAY LINE OF FOURTEENTH STREET; THENCE SOUTH 0 DEGREES 00 MINUTES 00 SECONDS EAST ALONG THE EXISTING WEST RIGHT OF WAY LINE OF FOURTEENTH STREET, A DISTANCE OF 10.13 FEET TO A RAILROAD SPIKE; THENCE NORTH 89 DEGREES 59 MINUTES 08 SECONDS WEST, A DISTANCE OF 380.04 FEET TO AN IRON PIN SET ON THE SOUTHERLY EXTENSION OF THE WEST LINE OF SAID LOT 9; THENCE NORTH 0 DEGREES 00 MINUTES 00 SECONDS WEST ALONG THE SOUTHERLY EXTENSION OF THE WEST LINE OF SAID LOT 9, A DISTANCE OF 8.85 FEET TO THE POINT OF BEGINNING, CONTAINING 3607 SQUARE FEET; MORE OR LESS.

EXCEPT ANY INTEREST IN THE COAL, OIL, GAS AND OTHER MINERALS UNDERLYING THE LAND WHICH HAVE BEEN HERETOFORE CONVEYED OR RESERVED IN PRIOR CONVEYANCES, AND ALL RIGHTS AND EASEMENTS IN FAVOR OF THE ESTATE OF SAID COAL, OIL, GAS AND OTHER MINERALS, IF ANY.

SITUATED IN SANGAMON COUNTY, ILLINOIS.

PIN: 22-10.0-253.001
22-10.0-253-002
22-10.0-253-012
22-10.0-253.013
22-10.0-253.015
22-10.0-253.020

Address: 2735 S. 14th Street, Springfield, Illinois 62703
2700 S. 13th Street, Springfield, Illinois 62703

4. Scottsdale

> Lot 1, except the East 40 feet thereof, in Strother G. Jones' Subdivision of Lands of the East Half of the Southeast Quarter of Section 26, Township 16 North Range 5 West of the Third Principal Meridian.
>
> Except all coal, minerals and mining rights heretofore conveyed or reserved of record.
>
> Situated in Sangamon County, Illinois.

5. Maple Creek

> (Maple Creek)
> All that part of the South half of the Northeast quarter of the Southwest quarter of Section Twenty-eight (28) in Township Fourteen (14) North and Range Ten (10) West of the Third Principal Meridian, Morgan County, Illinois, lying West of Arthur Harney's Addition to Woodson, except Four Hundred Thirty-five (435) feet off of the South end thereof, also, Part of the South half of the Northeast quarter of the Southwest quarter of Section Twenty-eight (28) in Township Fourteen (14) North and Range Ten (10) West of the Third Principal Meridian, bounded and described as follow: Beginning at a point 891 feet South of a stone at the Northwest corner of said Northeast quarter of the Southwest quarter of Section 28 and running thence East 837 feet, more or less, to the West line of Arthur Harney's Addition to the Village of Woodson, thence South 103.2 feet, thence West 525 feet, thence North 17.2 feet, thence West 312 feet and thence North 86 feet to the place of beginning.
>
> The above described land is assessed under the following Tax I.D. Number(s):
>
> #13-28-314-001

6. Cedarbrook Estates

> (Cedar Brook)
> A strip of ground 33 feet wide off of the South side of Lot Twelve (12); all of Lot Thirteen (13); and all of Lot Fourteen (14); EXCEPT that part of said Lot Fourteen (14) conveyed to the Chicago, Burlington and Quincy Railroad Company, to-wit:
>
> All that part of Lot 14, lying North of a line parallel to and 75 feet Southerly, measured at right angles from the center line of the main track of the new location of said Chicago, Burlington and Quincy Railroad, over, across and upon said Lot 14;
>
> ALSO EXCEPT beginning 33 feet North of the Southwest corner of said Lot 12, and running thence East 200 feet, thence South 120 feet, thence West 200 feet and thence North 120 feet to the place of beginning; all in Chambers Third Addition to the Town, now City, of Jacksonville, Morgan County, Illinois.
>
> The above described land is assessed under the following Tax I.D. Number(s):
>
> #09-21-405-005

7. Prairie Knolls

TRACT I: (Prairie Knoll)
The West half of the Southeast quarter of Section Twenty-two (22) in Township Fifteen (15) North and Range Ten (10) West of the Third Principal Meridian, Morgan County, Illinois, and ALSO, Part of the East half of the Southwest quarter of said Section 22 bounded as follows: Beginning at the Northeast corner of said half-quarter section and running thence West 3 rods, thence South 100 rods, thence East 3 rods, and thence North 100 rods to the place of beginning;

EXCEPT THE FOLLOWING TRACTS:

1. Two (2) acres in the Southwest corner thereof lying South and West of the right of way of the Chicago, Burlington and Quincy Railroad;

2. Commencing at the Southwest corner of the Southeast quarter of said Section 22, thence South 89°40'02" East along the South line of said Southeast quarter, a distance of 206.603 meters (677.83 feet), thence North 00°28'57" East, a distance of 43.779 meters (143.63 feet) to a point on the centerline of (F.A. Route 753, IL Route 104) East Morton Road; thence North 00°28'57" East, a distance of 20.032 meters (65.72 feet) to a point on the North right-of-way line of said East Morton Road, said point being the point of beginning. From said point of beginning; thence North 81°59'48" East, a distance of 40.443 meters (132.69 feet); thence South 89°31'03" East, a distance of 25.000 meters (82.02 feet); thence South 78°36'44" East to a point on said North right-of-way line, a distance of 50.919 meters (167.06 feet); thence North 87°41'31" West, a distance of 115.058 meters (377.49 feet) to the point of beginning;

3. That part heretofore condemned and taken by order of the County Court of Morgan County, Illinois, in a certain cause #59-253, wherein the Department of Public Works and Buildings of the State of Illinois was Plaintiff and Adeline Rawlings, et al. were Defendants, being that part of the above described premises contained in the following tract:

Part of the Southwest quarter of the Southeast quarter of Section 22 and the Southwest quarter of the Southwest quarter of Section 23, Township 15 North and Range 10 West of the Third Principal Meridian, being the following Parcels A and B and Tract 29A-F.

Parcel "A"
The location of the point of beginning for said Parcel "A" is described as follows: From a cross cut in the pavement at the Southwest corner, Southeast quarter, Section 22, Township 15 North and Range 10 West of the Third Principal Meridian, North 84°38' East 68.5 feet, thence South 87°35' East 344.0 feet, thence South 87°20' East 155.3 feet to the point of beginning.

The land in said Parcel "A" is described in detail as follows: From said point of beginning North 47°12' West 347.5 feet, thence South 85°25' East 914.2 feet, thence North 61°45" East 101.2 feet, thence in an Easterly direction along a curved line curving to the right and having a radius of 23,032.0 feet for a distance of 25.0 feet, thence South 2°40' West 244.8 feet, thence North 87°20' West 758.0 feet, more or less, to the point of beginning.

Parcel "B"
The location of the point of beginning for said Parcel "B" is described as follows: From a cross cut in the pavement at the Southwest corner, Southeast quarter of Section 22 in Township 15 North, Range 10 West of the Third Principal Meridian, North 84°38' East 68.5 feet, thence South 87°35' East 344.0 feet, thence South 87°20' East 2031.7 feet, thence South 87°16' East 204.6 feet to the point of beginning.

The land in said Parcel "B" is described in detail as follows: From said point of beginning North 2°44' West 145.0 feet, thence North 87°16' West 1307.5 feet, more or less, to the point of beginning.

Tract 29A-F
Part of the Southwest quarter of the Southwest quarter of Section 23, Township 15 North and Range 10 West of the Third Principal Meridian, described as follows:

The location of the point of beginning for said tract is described as follows: From a cross cut in the pavement at the Southwest corner of the Southeast quarter of Section 22, Township 15 North and Range 10 West of the Third Principal Meridian, North 84°38' East 68.5 feet, thence South 87°35' East 844.0 feet, thence South 87°20' East 2031.7 feet, thence South 87°16' East 204.6 feet to the point of beginning.

The land in said tract is described as follows: From said point of beginning North 2°44' East 199.0 feet, thence South 87°16' East 21.0 feet, thence South 56°01' East 100.70 feet, thence South 2°44' West 145.0 feet, thence North 87°16' West 110.0 feet, more or less, to the point of beginning.

4. Part of the West half of the Southeast quarter of Section Twenty-two (22), Township Fifteen (15) North, Range Ten (10) West of the Third Principal Meridian, Jacksonville Township, Morgan County, Illinois, and more particularly described as follows:

Commencing at the Southwest corner of the Southeast quarter of said Section 22, thence South 89 degrees 39 minutes 56 seconds East, along the South line of the Southeast quarter of said Section 22, a distance of 1323.92 feet to the Southeast corner of the West half of the Southeast quarter of said Section 22; thence North 00 degrees 02 minutes 56 seconds East, along the East line of the West half of the Southeast quarter of said Section 22, a distance of 243.07 feet to the point of beginning;

From said point of beginning; thence Northwesterly 25.02 feet along a non tangential curve to the left having a radius of 23032.00 feet, the chord of said curve bears North 87 degrees 45 minutes 11 seconds West, a distance of 25.02 feet to a point on the Northerly right of way line of F.A.P. Route 753 (IL Rte. 104); thence South 58 degrees 23 minutes 55 seconds West along the Northerly right of way line of F.A.P. Route 753 (IL Rte. 104), a distance of 99.99 feet; thence North 87 degrees 41 minutes 37 seconds West, along the Northerly right of way line of F.A.P. Route 753 (IL Rte. 104), a distance of 157.29 feet; thence North 78 degrees 36 minutes 52 seconds West, along the Northerly right of way line of F.A.P. Route 753 (IL Rte. 104), a distance of 167.06 feet; thence North 89 degrees 31 minutes 07 seconds West, along the Northerly right of way line of F.A.P. Route 753 (IL Rte. 104), a distance of 82.02 feet; thence South 81 degrees 59 minutes 45 seconds West, along the Northerly right of way line of F.A.P. Route 753 (IL Rte. 104), a distance of 17.06 feet; thence North 00 degrees 02 minutes 56 seconds East, along a line parallel with the East line of the West half of the Southeast quarter of said Section 22, a distance of 420.00 feet; thence South 89 degrees 39 minutes 56 seconds East, along a line parallel to the South line of the Southeast quarter of said Section 22, a distance of 530.00 feet to a point on the East line of the West half of the Southeast quarter of said Section 22; thence South 00 degrees 02 minutes 56 seconds West, a distance of 403.12 feet to the point of beginning; and,

A part of the Southeast quarter and a part of the Southwest quarter of Section Twenty-two (22), Township Fifteen (15) North, Range Ten (10) West of the Third Principal Meridian, Morgan County, Illinois, described as follows:

Commencing at the Southwest corner of the Southeast quarter of said Section 22, thence North 00°02'54" East along the West line of said Southeast quarter, 439.83 feet to the point of beginning; From the point of beginning, thence continuing North 00°02'54" East along said West line, 561.32 feet; thence North 89°50'39" West, 46.84 feet; thence North 00°10'56" East 218.10 feet; thence South 89°50'39" East 1,370.16 feet to a point on the East line of the West half of the Southeast quarter of said Section 22; thence South 00°02'54" West along said East line, 577.21 feet; thence

North 89°29'05" West, 25.01 feet to a point on the West right-of-way line of Blacks Lane; thence North 89°39'41" West, 504.92 feet; thence South 00°02'32" West, 420.13 feet to a point on the North right-of-way line of Morton Avenue; thence South 81°58'18" West, 115.32 feet; thence North 87°41'46" West 352.97 feet to a point on the Northerly right-of-way line of the BNSF Railroad; last Two (2) calls are along said North right-of-way of Morton Avenue; thence 394.23 feet along said Northerly right-of-way line on a curve to the left having a radius of 5,889.02 feet, whose chord bears North 56°01'55" West, 394.16 feet to the point of beginning; EXCEPT THE NORTH TWENTY-FIVE (25) FEET THEREOF.

TRACT II: (North of Prairie Knoll)
Part of the North half of Section Twenty-two (22) in Township Fifteen (15) North and Range Ten (10) West of the Third Principal Meridian, Morgan County, Illinois, more particularly described as follows: Beginning at a point on the North line of the South half of said Section 22 marking the Northwest corner of Prairie Knoll Third Addition, said point being 2,684.56 feet West of an iron pipe (found) marking the Northeast corner of the Southeast quarter of said Section 22, thence North 0°12'03" East along the West line of Prairie Knolls Third Addition extended to the centerline of a tributary of Mauvaisterre Creek, thence Easterly along the centerline of said tributary to the intersection with the North line of the South half of said Section 22, thence North 89°50'01" West along the North line of the South half of said Section 22 to the point of beginning.

The above described land is assessed under the following Tax I.D. Number(s):

#09-22-400-004 (Tract I)
#09-22-400-003 (pt-N25') (Tract I)
#09-22-100-021 (Tract II)
#09-22-200-023 (Tract II)

8. Rolling Acres

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF MORGAN, STATE OF ILLINOIS, AND IS DESCRIBED AS FOLLOWS:

Parcel 1
Part of the Southwest Quarter of Section Twenty-two (22), Township Fifteen (15) North, Range Ten (10) West of the Third Principal Meridian, Morgan County, Illinois, described as follows:

Beginning at the Southwest corner of the Southwest Quarter of said Section 22; thence South 89 degrees 56 minutes 33 seconds East, 60.0 feet along the South line of the Southwest Quarter of said Section 22, thence North 0 degrees 00 minutes East, 520.0 feet parallel with the West line of the Southwest Quarter of said Section 22, thence South 89 degrees 56 minutes 33 seconds East, 709.0 feet parallel with the South line of the Southwest Quarter of said Section 22; thence Northeasterly 83.6 feet along an existing fence line to a point, said point being 600 feet North and 793.15 feet East of the Southwest corner of the Southwest Quarter of said Section 22; thence continuing Northeasterly 80.3 feet along an existing fence line; thence Northerly 89 feet along an existing fence line to an existing corner fence post; thence Easterly 62 feet along an existing fence line to an existing corner fence post; thence Northeasterly 21.5 feet along an existing fence line to a point 782 feet North and 891 feet East of the Southwest corner of the Southwest Quarter of said Section 22; thence North 0 degrees 52 minutes 07 seconds East, 359.75 feet to a point on the Southerly right-of-way line of the Burlington-Northern Railroad, thence Northwesterly 990.5 feet along the Southerly right-of-way line of the Burlington-Northern Railroad to a point on the West line of the Southwest Quarter of said Section 22; thence South 0 degrees 00 minutes West, 1562.07 feet along the West line of the Southwest Quarter of said Section 22 to the point of beginning. Except that part of the above described premises conveyed to the State of Illinois by Road Deed dated October 24, 1953 and recorded January 20, 1954 in Deed Record 179 at Page 130.

Parcel 2
Part of the Southeast Quarter of Section Twenty-one (21), Township Fifteen (15) North, Range Ten (10) West of the Third Principal Meridian, Morgan County, Illinois, described as follows:

Commencing at the Southeast corner of the Southeast Quarter of said Section 21; thence North 400.0 feet along the East line of the Southeast Quarter of said Section 21 to the point of beginning; thence continuing North 930.0 feet along the East line of the Southeast Quarter of said Section 21; thence North 88 degrees 50 minutes 20 seconds West, 1108.3 feet to a point 330.0 feet East of the centerline of Brooklyn Avenue; thence South 0 degrees 18 minutes 50 seconds West, 160.0 feet parallel with the centerline of Brooklyn Avenue; thence North 88 degrees 50 minutes 20 seconds West 24.3 feet to a point 305.7 feet East of the centerline of Brooklyn Avenue; thence South 0 degrees 03 minutes 37 seconds West, 322.84 feet to a point 867.5 feet North of the South line of the Southeast Quarter of said Section 21; thence North 89 degrees 52 minutes West, 307.15 feet parallel with the South line of the Southeast Quarter of said Section 21 to a point in the centerline of Brooklyn Avenue; thence South 0 degrees 18 minutes 50 seconds West, 40 feet along the centerline of Brooklyn Avenue to a point 827.5 feet North of the South line of the Southeast Quarter of said Section 21; thence South 89 degrees 52 minutes East, 307.32 feet parallel with the South line of the Southeast Quarter of said Section 21; thence South 0 degrees 03 minutes 37 seconds West, 427.5 feet to a point 400 feet North of the South line of the Southeast Quarter of said Section 21, thence South 89 degrees 52 minutes East, 1134.13 feet parallel with the South line of the Southeast Quarter of said Section 21 to the point of beginning.

Except any interest in the coal, oil, gas and other minerals underlying the land which have been heretofore conveyed or reserved in prior conveyances, and all rights and easements in favor of the estate of said coal, oil, gas and other minerals, if any.

Situated in Morgan County, Illinois.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:

TIME OUT PROPERTIES, LLC, et al.　　　　CASE NO. 24-3435-5-PWM

　　DEBTOR　　　　　　　　　　　　　　　CHAPTER 11

**NOTICE OF APPLICATION TO EMPLOY MARKETING BROKER**

　　　　NOTICE IS HEREBY GIVEN of the APPLICATION TO EMPLOY MARKETING BROKER ("Motion") filed simultaneously herewith in the above-captioned case; and,

　　FURTHER NOTICE IS HEREBY GIVEN that the Motion may be allowed provided no response and request for a hearing is made by a party in interest in writing to the Clerk of this Court within TWENTY-ONE (21) DAYS from the date of this notice; and,

　　FURTHER NOTICE IS HEREBY GIVEN that if a response and a request for a hearing is filed by a party in interest in writing within the time indicated, a hearing will be conducted on the Motion and any responses thereto at a date, time and place to be later set by the Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the Motion thereto <u>ex parte</u> without further notice.

　　Dated: 02/05/2025

　　　　　　　　　　　　　　　<u>s/John C. Bircher III</u>
　　　　　　　　　　　　　　　John C. Bircher III
　　　　　　　　　　　　　　　N.C. State Bar No. 24119
　　　　　　　　　　　　　　　DAVIS HARTMAN WRIGHT LLP
　　　　　　　　　　　　　　　209 Pollock Street
　　　　　　　　　　　　　　　New Bern, NC 28560
　　　　　　　　　　　　　　　Telephone/Fascimile 252-262-7055
　　　　　　　　　　　　　　　Email: jcb@dhwlegal.com